IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ALMA DOOLEY                                                                                    PLAINTIFF

v.                              Civil No. 4:14-cv-6022

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                      DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Alma Dooley, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under the provisions of Titles II and XVI of the Social Security Act ("Act"). The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 7).[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**I.    Background:**

Plaintiff protectively filed applications for DIB and SSI on April 13, 2011, alleging an onset date of July 1, 2007, due to heart disease, high blood pressure, and arthritis. (Tr. 9, 171-172). For DIB purposes, Plaintiff retained insured status through December 31, 2012. (Tr. 11, 179). Plaintiff's

---

[1] The docket numbers for this case are referenced by the designation "ECF No. __." The transcript pages for this case are referenced by the designation "Tr."

-1-

applications were denied initially and on reconsideration. An administrative hearing was held on October 22, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 29-79). A Vocational Expert ("VE") was also present and testified. (Tr. 72-78).

On January 23, 2013, the Administrative Law Judge ("ALJ") entered an unfavorable decision denying Plaintiff's application for DIB and SSI. (Tr. 9-23). In this decision, the ALJ determined Plaintiff had the following severe impairments: "dysfunction of a joint-right arm, inflammatory arthritis, cardiomyopathies, hypertension, mood disorder, and somatoform disorder." (Tr. 11, Finding 3). After reviewing all of the evidence presented, however, the ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment listing. (Tr. 12-14, Finding 4).

The ALJ next evaluated Plaintiff's subjective complaints and determined her RFC. (Tr. 14-22). The ALJ first evaluated Plaintiff's subjective complaints and found she was not entirely credible. (Tr. 15-16). The ALJ then found Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally stoop and crouch; can frequently reach, handle, finger and feel with the right dominate arm; she is able to understand, retain, and carry out simple instructions; make simple work-related decisions; perform work where the complexity of a task is learned and performed by rote, with few variables, and with little judgment; work in an environment with few, if any, work place changes; perform work where interpersonal contact is incidental to the work performed; and perform work where supervision is simple direct and concrete.

(T. 14, Finding 5).

With the help of a VE, the ALJ evaluated Plaintiff's past relevant work ("PRW"). (Tr. 73-75). The ALJ determined Plaintiff could not perform any PRW. (Tr. 22, Finding 6). The ALJ then considered whether Plaintiff retained the capacity to perform other work existing in significant

numbers in the national economy. (Tr. 22-23, 75-78). Based on the VE's testimony, the ALJ determined Plaintiff retained the capacity to perform the requirements of representative occupations such as housekeeper and price marker. (Tr. 22-23, Finding 10). The ALJ concluded Plaintiff was not disabled. (Tr. 23, Finding 11).

Plaintiff requested a review of the hearing decision by the Appeals Council on February 7, 2013, which denied the request on January 30, 2014. (Tr. 1-5). On February 21, 2014, Plaintiff filed the present appeal. (ECF No. 1). The Parties consented to the jurisdiction of this Court on February 28, 2014. (ECF No. 7). Both Parties have filed appeal briefs, and the case is ready for decision. (ECF Nos. 11, 13).

## II.     Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record to support a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether a claimant suffers from a disability, the Commissioner uses a five-step sequential evaluation.  She determines: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the RFC to perform her PRW; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.  20 C.F.R. §§ 404.1520(a)-(f)*; Cox*, 160 F.3d at 1206.  The fact finder only considers the plaintiff's age, education, and work experience in light of her RFC if the final stage of this analysis is reached.  *See* 20 C.F.R. §§ 404.1520, 416.920.

**III.**   **Discussion**:

Plaintiff raises three arguments for reversal: (1) the ALJ erred when she found Plaintiff did not meet the requirements of Listing 1.02; (2) the ALJ erred when she found Plaintiff did not meet the requirements of a cardiovascular system listing in Listing 4.00; and (3) the ALJ did not pose a properly phrased hypothetical to the VE.

**A.**   **Listing 1.02**

A claimant has the burden of proving an impairment or combination of impairments meets or equals a listing in the Listing of Impairments, Appendix I, Subpart P, Regulation No. 4.  *See Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).  To meet a listing, a claimant must show

her impairment met all of the listing's criteria. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010).

Plaintiff claims the ALJ erred by finding her impairments did not meet the requirements of Listing 1.02. (ECF No. 11 at 9-10). Listing 1.02 requires, in pertinent part:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).
>
> With:
>
> Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02. The ALJ discussed whether Plaintiff met the Listing, but concluded, "the evidence does not demonstrate the claimant has the degree of difficulty in performing fine and gross movements." (Tr. 12).

The record shows Plaintiff complained of right arm pain in January 2011. (Tr. 208). In March 2011, Plaintiff saw Dr. John Crenshaw at the Charitable Christian Medical Clinic, who noted Plaintiff had right arm and thumb pain after doing housework. (Tr. 304). The State's consultative physician, Dr. R. Paul Tucker, examined Plaintiff in July 2011. (Tr. 389-394). Dr. Tucker noted Plaintiff had generalized arthritis, moderately reduced range of motion in her right wrist, pain in her right shoulder and right wrist, and reduced grip in her right and left hands, but found she could perform fine movements, such as writing with a pen and picking up a coin. (Tr. 390-394). Dr. Tucker specifically noted his examination uncovered no evidence of joint deformities, instability, ankylosis, or muscle atrophy. (Tr. 392-393). He diagnosed Plaintiff with "mild weakness in the right arm and hand, related to pain in her right shoulder and wrist ... [she] may have carpal tunnel

syndrome on the right side." (Tr. 394). On July 25, 2011, Dr. Robert Redd, a State non-examining physician, completed a physical RFC assessment and opined Plaintiff did not have any manipulative limitations and could carry up to twenty pounds, an opinion affirmed by Dr. Stephen Whaley on December 19, 2011. (Tr. 399-405, 473).

In March 2012, Plaintiff visited the ER with new complaints of moderate right arm pain and stiffness. (Tr. 526). It was noted she had reduced range of motion and slight swelling in her right arm, and she was prescribed an anti-inflammatory. (Tr. 526-530). Plaintiff saw Dr. Crenshaw the next month, who noted Plaintiff had regained full range of motion in her right shoulder and arm. (Tr. 487). In May 2012, Plaintiff saw Dr. Crenshaw again, who noted Plaintiff possibly had carpal tunnel syndrome in her right hand and prescribed an NSAID. (Tr. 489).

Plaintiff did not explain in her brief how she met the criteria of Listing 1.02, other than stating "the ALJ failed to analyze an entire line of evidence relating to the pain and the underlying impairment alleged to cause the pain." (ECF No. 11 at 6). A review of the evidence shows Plaintiff failed to carry her burden to show she met the Listing's requirements. There was no imaging of joint space narrowing, bony destruction, or ankylosis in the record. Additionally, there was no evidence of a gross anatomical deformity or evidence she was unable to perform fine or gross movements effectively. Plaintiff had the burden of demonstrating her impairments met all the requirements of Listing 1.02, and has not met her burden. *See Johnson*, 390 F.3d at 1070. Accordingly, the ALJ did not err in finding Plaintiff's impairments do not meet the requirements of Listing 1.02.

    **B.**    **Cardiovascular System Listings**

The ALJ evaluated whether Plaintiff met Listings 4.02, 4.04, and 4.05. (Tr. 12-13). As

Defendant notes, the Listings require a cardiovascular impairment resulting from one or more of the following four consequences of heart disease:

(I) Chronic heart failure or ventricular dysfunction;

(ii) Discomfort or pain due to myocardial ischemia, with or without necrosis of heart muscle;

(iii) Syncope, or near syncope, due to inadequate cerebral perfusion from any cardiac cause, such as obstruction of flow or disturbance in rhythm or conduction resulting in inadequate cardiac output; or

(iv) Central cyanosis due to right-to-left shunt, reduced oxygen concentration in the arterial blood, or pulmonary vascular disease.

20 C.F.R 404, subpt. P, app. 1, § 4.00(A)(1)(b)(i)-(iv); (ECF No. 13 at 9). The impairment must be documented by observations and treatment over at least a three month period. 20 C.F.R 404, subpt. P, app. 1, § 4.00(B)(1). After considering the requirements of the Listings, the ALJ concluded Plaintiff did not meet any of the cardiovascular system listings' criteria. (Tr. 12-13).

Plaintiff neither identified the listing she believes she met nor explained how she fulfilled the criteria for any of the cardiovascular listings.[2] (ECF No. 11 at 12-13). Because Plaintiff has not provided briefing or argument supporting her claim, the Court can dismiss it on this basis alone. *See Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting the claimant's argument "out of hand" because the claimant provided no analysis of the relevant law or facts).

---

[2] Plaintiff's brief in this section primarily involves statements that do not relate to the Listings of Impairments. Plaintiff alleges the ALJ failed to adequately develop the record and then immediately proceeds to argue, improperly, the ALJ should have consulted the Medical-Vocational Guidelines or "Grids" to determine if she was disabled. (ECF No. 11 at 8-10). The Court has considered these arguments and finds the record was adequately developed, and the ALJ properly considered testimony from a VE because Plaintiff had a combination of exertional and non-exertional impairments.

The Court has reviewed the record, however, and the evidence shows Plaintiff did not meet the criteria for any cardiovascular listing. Plaintiff had a successful emergency heart catherization and PTCA stenting of a 99-percent right coronary artery stenosis on February 9, 2007. (Tr. 279-298). The procedure restored her circulation and resulted in a complete blockage reduction. (Tr. 293). She was discharged on February 10, 2007, prescribed aspirin and Plavix, and encouraged to stop smoking and lose weight. (Tr. 298). In April 2009, Plaintiff was admitted to the ER for chest paints. (Tr. 280). She had an echocardiogram and chest x-ray, which were negative, and she was discharged. (Tr. 280). Plaintiff's treatment notes continued to document her heart as normal between 2009 and 2012. (Tr. 304, 308, 407-411, 456, 464, 480, 494).

Whether Plaintiff meets the criteria of a listed impairment is a medical determination and must be established by medically acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. § 404.1525(c). The Court has examined the record against each of the listings. Because Plaintiff's coronary artery stenosis was immediately corrected, and she did not demonstrate "very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living," she did not meet the requirements for ongoing ischemia in Listing 4.04(C) - Ischemic Heart Disease. None of the other listings are relevant to Plaintiff's heart impairment. The evidence shows Plaintiff's heart condition did not meet a listing, and, accordingly, the ALJ's determination was based on substantial evidence.

### C. Step 5 Determination

At Step Five of a disability determination, the SSA has the burden of establishing that a claimant retains the ability to perform other work in the economy. *See Snead v. Barnhart*, 360 F.3d

838, 836 (8th Cir. 2004). The ALJ may meet this burden by either applying the Grids or by relying upon the testimony of a VE. The ALJ may not apply the Grids, and must hear testimony from a VE, where a claimant's RFC is significantly diminished by a nonexertional limitation. *See McGeorge v. Barnhart*, 321 F.3d 766, 768-769 (8th Cir. 2003).

Plaintiff believes she cannot perform the jobs selected by the VE and adopted by the ALJ because these jobs "require a GED," and the hypothetical posed to the VE "did not specifically set out Plaintiff's limitations above just listing her at the light exertional level." (ECF No. 11 at 10-12). The Court first notes Plaintiff's argument only highlights the ALJ's third hypothetical to the VE, and overlooks the ALJ's fourth hypothetical to the VE. (Tr. 75-76).

> The third hypothetical posed to the VE described a person as follows:
>
> Lets's assume now we have a third hypothetical person, the same age, the same education, the same work experience. Assume this hypothetical person can still perform no greater than light work as defined in the regulations, and assume that this individual could perform no greater than unskilled work defined as able to understand, retain and carry out simple instructions; make simple, work-related decisions; perform work where the complexity of a task is learned and performed by wrote with few variables, little judgment; work where supervision is simple, direct and concrete, and where interpersonal contact is incidental to the work performed.

(Tr. 75). In response, the VE testified this person could perform the jobs of housekeeper and price marker. (Tr. 75-76). The ALJ then asked the fourth and final hypothetical:

> ALJ: If we assume a hypothetical person the same age, the same education, the same work experience, but this hypothetical person, again, can perform no greater than light work, and let's say no greater than semi-skilled, light work, and ... can frequently reach with the right hand, this is all the right dominant arm, can frequently reach, handle, finger, feel. Could such a person still work as a price marker, housekeeper or a short-order cook?
>
> VE: Yes, Your Honor. Let me check that short order cook as well, and make that final decision ... yes, ma'am.

(Tr. 76).

VE testimony, in response to a hypothetical question, is substantial evidence if the hypothetical sets forth the credible impairments with reasonable precision. *See Starr v. Sullivan*, 981 F.2d 1006 (8th Cir. 1992). The ALJ must only include in the hypothetical the impairments which the ALJ actually finds credible, and not those which she rejects, assuming her findings are supported by substantial evidence. *See Onstad v. Shalala*, 999 F.2d 1232 (8th Cir. 1993).

Having thoroughly reviewed the hearing transcript, along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See e.g., Rappoport v. Sullivan*, 942 F.2d 1320, 1322 (8th Cir. 1991). The Court has also reviewed the Dictionary of Occupational Titles ("DOT") descriptions and finds there was no conflict between the DOT and the VE's testimony. The positions of housekeeper and pricemarker are unskilled work with an SVP of 2 and do not require a GED. The VE stated jobs existed in both the national and regional economy for the vocational profile of the Plaintiff. Such testimony, based on a hypothetical question consistent with the record, provided substantial evidence. *See Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005).

### IV.   Conclusion:

Based on the foregoing, I find the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**Dated** this **12th day of February, 2015.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE